CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
MAY 26 2005
JOHN F. CORCORAN, CLERK
BY: /s/
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CEDRIC LEVAR ALEXANDER, | CIVIL ACTION NO. 7:04CV00393 |
| | CRIM. ACTION NO. 3:01CR00035 |
| Petitioner, | |
| v. | |
| | **MEMORANDUM OPINION** |
| UNITED STATES OF AMERICA, | |
| | |
| Respondent. | JUDGE JAMES H. MICHAEL, JR. |

The petitioner, Cedric Levar Alexander, brings this motion to reverse his conviction, vacate his sentence, or reinstate his appellate rights pursuant to Title 28, United States Code, Section 2255. Alexander challenges the validity of his conviction and sentence for conspiracy and possession with intent to distribute crack cocaine. He claims that his counsel's alleged errors at sentencing and on appeal deprived him of his Sixth Amendment right to the effective assistance of counsel, and that the prosecution's misconduct during closing arguments at trial deprived him of his right to due process. In a supplement to his petition, Alexander also claims that his sentence was imposed in violation of *United States v. Blakely* and *United States v. Booker*.

The court finds that the record in this case conclusively shows that the petitioner is entitled to no relief. The petition does not allege sufficient facts which, if true, would entitle him to relief. The court therefore declines to hold an evidentiary hearing and dismisses the petition. *See* 28 U.S.C. § 2255; *Townsend v. Sain*, 372 U.S. 293, 312 (1963).

**I.    Factual and Procedural History**

On May 8, 2001, a grand jury indicted the petitioner on one count of conspiracy to

possess with intent to distribute fifty grams or more of crack cocaine and one count of possession with intent to distribute fifty grams or more of crack cocaine, in violation of Title 21, United States Code, Sections 846 and 841, respectively. On August 16, 2001, Alexander was convicted by a jury on both counts. He was sentenced by this court on August 22, 2002, to 324 months imprisonment (the low end of the applicable sentencing range as determined by the court), 60 months of supervised release, and a $100 special assessment. Alexander then filed a timely appeal on several issues, but the sentence and conviction were affirmed by the Court of Appeals. Alexander was represented at trial and on appeal by William F. Quillian, III.

On July 19, 2004, Alexander filed this petition for relief under 28 U.S.C. § 2255. Alexander alleges the following grounds for relief in his § 2255 motion:

1. The petitioner's counsel provided ineffective assistance at sentencing, because: (a) he failed to object to the inclusion of two trespassing convictions in the defendant's criminal history score; (b) he should have argued that the two trespassing convictions should only have been counted once, as they were related offenses; and (c) he failed to move for a downward departure below the sentencing range.

2. Counsel provided ineffective assistance on appeal by failing to argue that the defendant's motion for a judgment of acquittal should have been granted.

3. The petitioner's right to due process was violated when the prosecutor made certain remarks during his closing argument.

The United States filed a response on January 3, 2005, moving for dismissal. In addition, on

February 2, 2005, the petitioner filed a motion under Federal Rule of Civil Procedure 15(d) to supplement his petition and add a Sixth Amendment challenge to his sentencing based on the Supreme Court's recent decisions in *Blakely v. Washington*, 124 S. Ct. 2531 (2004) and *United States v. Booker*, 125 S. Ct. 738 (2005).

## II.     Ineffective Assistance at Sentencing

The Presentence Investigation Report (PSR) prepared by the Probation Office and relied upon by the court at sentencing assigned the petitioner three criminal history points: one for an assault conviction (which the petitioner does not challenge) and one point each for two trespassing convictions. This yielded a criminal history category of II, resulting in a sentencing range of 324 to 405 months. The court, after overruling other objections to the PSR not at issue here, adopted the PSR's findings and sentenced the defendant to 324 months. The petitioner argues that his counsel was ineffective at sentencing for three reasons.

The petitioner argues first that his previous counsel should have objected to the PSR's inclusion of the two prior trespassing convictions. According to the federal sentencing guidelines, a trespassing conviction does not count toward a defendant's criminal history unless it resulted in a term of imprisonment of at least 30 days or a term of probation of at least one year. U.S. Sentencing Guidelines Manual § 4A1.2(c)(1) (2000). The parties agree that on the first conviction, Alexander received a sentence of 30 days imprisonment, all suspended, and one year good behavior, and for the second conviction he was sentenced to 60 days imprisonment, 50 days suspended, and one year good behavior. Because only the

portion of a sentence not suspended counts, Alexander did not receive a term of imprisonment of at least thirty days for either trespassing conviction. U.S.S.G. § 4A1.2(b)(2). Thus, for the trespassing convictions to qualify, Alexander must have received a sentence of probation of at least one year for each offense. The dispute arises over whether a suspended sentence with a one year good behavior requirement qualifies as a "term of probation" under § 4A1.2(c)(1): the government believes that it does, while the petitioner maintains that it does not.

Of course, at issue here is not the merits of the objection the PSR itself, but whether the petitioner's trial counsel was so ineffective as to violate Alexander's Sixth Amendment right to counsel. A defendant is deprived of his constitutional right to counsel if his attorney's "conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In order to succeed on a claim of ineffective assistance of counsel, a habeas petitioner must show that: (1) his counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that but for counsel's failures, the result of the proceedings would have been different. *Id.* at 687-94.

Courts have reviewed several types of sentences short of supervised probation – including those imposed by Virginia courts – and found them to qualify as a term of probation under § 4A1.2(c)(1). It seems to this court that what qualifies a sentence as a term of probation, regardless of how it is labeled by the state, is whether it is revocable. Virginia judges may impose suspended sentences with or without supervised probation. Va. Code

Ann. § 19.2-303 (2004). The court may later revoke a sentence within the probation or suspension period, or if none has been fixed, within the maximum period for which the defendant originally could have been sentenced. Va. Code Ann. § 19.2-306. In unpublished opinions, the Court of Appeals for the Fourth Circuit has addressed Virginia's scheme. In *United States v. Clapp*, the defendant received suspended sentences for the offenses at issue, with no period of probation and no fixed time when the suspension would end. Since the maximum terms of imprisonment were one year for each offense, the court found that under Virginia law, the suspended sentences were subject to revocation for up to one year, and they therefore qualified as terms of probation of at least one year and were properly included in Clapp's criminal history under the federal sentencing guidelines. 1999 U.S. App. LEXIS 11377, at * 8-14 (4th Cir. June 4, 1999). In another case more similar to the instant one, the defendant had previously received a suspended sentence for a misdemeanor conviction with one year of "good behavior" and no term of supervised probation. *United States v. Brown*, 2000 WL 930786, at * 10 (4th Cir. July 10, 2000). The Fourth Circuit found that a suspended sentence with "good behavior" was functionally equivalent to unsupervised probation (citing *Dyke v. Commonwealth*, 69 S.E.2d 483 (Va. 1952)), that it was revocable, and that it could therefore be included in the defendant's criminal history under § 4A1.2(c)(1). *Brown*, 2000 WL 930786, at * 11-12. Other circuits have agreed in the case of similar state sentencing schemes. *See Harris v. United States*, 204 F.3d 681, 682 (6th Cir. 2000) (finding that "conditional discharge" – a suspended sentence conditioned upon no further convictions – is the functional equivalent of unsupervised probation and counts as a

"term of probation" under § 4A1.2(c)(1)); *United States v. Caputo*, 978 F.2d 972, 976-77 (7th Cir. 1992) (finding that "conditional discharge" – essentially probation without a probation officer – counts as a "term of probation" under § 4A1.2(c)(1)); *United States v. Lloyd*, 43 F.3d 1183, 1188 (8th Cir. 1994) (finding that probation encompasses conditional discharge for purposes of § 4A1.2(c)(1)).

Courts have made similar findings in the context of § 4A1.1D of the Sentencing Guidelines, which provides for two additional criminal history points "if the defendant committed the instant offense while under any criminal justice sentence, including probation . . . ." Application Note 4 to § 4A1.1D states that a "criminal justice sentence" is a sentence countable under § 4A1.2 (the section at issue here) that has a custodial or supervisory component, including unsupervised probation. As under § 4A1.2, courts have defined probation under § 4A1.1D to include sentences similar to Alexander's. *See United States v. Eldridge*, 1998 WL 393705, at * 3 (4th Cir. July 2, 1998) (suspended sentence conditioned upon good behavior); *Beamon v. United States*, 189 F. Supp. 2d 350, 358 (E.D. Va. 2002) (suspended sentence conditioned upon good behavior); *United States v. Labella-Szuba*, 92 F.3d 136, 138 (2d Cir. 1996) (conditional discharge sentence where court retained power to revoke).

It is clear, then, that Alexander's suspended sentence with a one year good behavior requirement qualifies as a "term of probation" under § 4A1.2(c)(1) of the federal sentencing guidelines. Although his sentence did not include an explicit reference to "probation," and he was not supervised by a probation officer, his sentence amounted to a term of

unsupervised probation that was revocable by the court. Such a sentence is encompassed by § 4A1.2(c)(1).

Alexander next argues that his counsel was ineffective for failing to argue at sentencing that the two trespassing convictions should have been counted as a single offense, rather than as two separate offenses. He emphasizes that both offenses were for trespassing, both occurred at the same apartment complex within one month of each other, and they were consolidated for sentencing on the same day. Therefore, he claims, he should have received one total point for the two convictions, instead of two points.

Prior sentences imposed in "related" cases are treated as one offense in calculating a defendant's criminal history score. U.S. Sentencing Guidelines Manual § 4A1.2(a)(2). "Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). Otherwise, prior sentences are considered related if they resulted from offenses that (A) occurred on the same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing." *Id.* at § 4A1.2, cmt. n. 3. In this case, the court cannot find that the two convictions were related, because both parties agree that Alexander was arrested for the first trespass prior to committing the second. *See United States v. Judge*, 2004 U.S. App. LEXIS 5869 (4th Cir. March 20, 2004); *United States v. Singleton*, 107 F.3d 1091, 1104 (4th Cir. 1997). The petitioner cites no authority which would persuade the court that the intervening arrest rule is not absolute. In addition, as the government points out, awarding one criminal history point for the trespassing convictions

7

rather than two (for a total of two points rather than three), would still result in a criminal history category of II and the same sentencing range. U.S.S.G. at Ch. 5, Pt. A. Thus, even if the failure to contest this issue had been error, it would not have prejudiced the defendant.

Finally, Alexander argues that his counsel should have asked for a downward departure below the applicable sentencing range, because his criminal history category overstated the seriousness of his criminal history. The guidelines allow a court to depart below the otherwise applicable sentencing range if it concludes that the defendant's criminal history category significantly overstates the seriousness of his criminal history or the likelihood of recidivism. *Id.* at § 4A1.3. In other words, the court may conclude that the defendant's criminal history is significantly less serious than that of most defendants in the same category. *Id.* Here, the defendant received three criminal history points: one for an assault conviction and one each for two trespassing convictions. Defendants with two or three points are placed in criminal history category II. The only lower category, criminal history category I, is for defendants with zero or one criminal history point. U.S.S.G. at Ch. 5, Pt. A. Essentially, the petitioner argues that he is more similar to the average Category I defendant than the typical Category II defendant. It does not seem unreasonable, however, that Alexander's three prior convictions should place him in the second-lowest category, especially considering he had nine other prior convictions for which he received no criminal history points. If he were in Category I, he would grouped with defendants with no criminal history at all. The court cannot conclude that category I would be more appropriate, or that category II significantly over-represents his criminal history or the likelihood that he will

commit future crimes.

More importantly, perhaps, the petitioner's counsel in fact repeatedly requested a downward departure at the sentencing hearing. The applicable sentencing range was 324 to 405 months. Quillian noted that Alexander's co-conspirator, Antonio Oniel Christian, had received a sentence of 180 months. (Case No. 3:00-CR-00076) Quillian argued that Alexander was less culpable than Christian, despite his higher sentencing range. (Sent. Tr. at 62.) He asked that Alexander be given the benefit of the safety valve, or "something of that ilk," which would have resulted in a sentence below the range. (Sent. Tr. at 63). He later added:

> The guidelines . . . are there because . . . the legislative system has seen fit to place them there and they are heavy. I represent to the Court and I ask the Court, I plead with the Court to give consideration to equalizing Mr. Alexander's situation as much as possible with that of Mr. Christian. There is nothing between these two individuals that separates one from the other. As a matter of fact, Mr. Christian's prior history puts him in a more dangerous, if you will or much more blameworthy category than does Mr. Alexander. . . . But because of the fact we are dealing within the same jurisdiction as co-defendants, I ask the Court to give serious consideration, serious weight to that and to equalize as much as possible as the Court can, the sentence it imposes on Mr. Alexander. . . . I know the numbers. The numbers indicate a much higher range than what I'm asking for, but this Court does have the authority and ability to do less than that and I ask the Court to take this and consider this is one of those cases where Mr. Alexander is not standing, I submit, he's standing in relation to the other co-defendant in the case and I ask the Court to take that into consideration in sentencing in the case." (Sent. Tr. at 64-66).

It is hard to conceive how Quillian's remarks could be interpreted as anything other than a request to sentence Alexander to a term of less than 324 months, the low end of the sentencing range. In effect, then, the petitioner's § 2255 motion, which should have at least acknowledged Quillian's request for a downward departure, contends that Quillian should

have requested a downward departure on a somewhat different basis. However, Quillian's decision to focus on the disparity between Alexander and Christian, rather than the appropriateness of the criminal history categories (although that was implicit in his comments), surely was not objectively unreasonable, especially since the petitioner's current purported basis for a downward departure is not a strong one, as discussed above.

Because an objection to the inclusion of two criminal history points for Alexander's trespassing convictions in the calculation of his criminal history score would have been futile, and because a request for a downward departure would likewise have been futile, Alexander cannot show that his attorney was constitutionally "ineffective" in failing to make these arguments at sentencing. *See Strickland v. Washington,* 466 U.S. 668, 687-96 (1984).

### III.   Ineffective Assistance on Appeal

As the petitioner notes, a defendant has the right to the effective assistance of counsel on appeal. The standard is the same *Strickland* standard that applies to trial counsel. *Smith v. Robbins,* 528 U.S. 259, 285 (2000). In other words, a habeas petitioner must show that his appellate counsel's actions were "objectively unreasonable" and there is a "reasonable probability that, but for his counsel's unreasonable failure . . . , he would have prevailed on his appeal." *Id.* Here, the petitioner claims that his counsel should have argued on appeal that the guilty verdict was not supported by the evidence, an issue that counsel had preserved the right to argue on appeal. This court must start with the presumption that appellate counsel acted reasonably in deciding which issues were most likely to afford relief on appeal. *See Pruett v. Thompson,* 996 F.2d 1560, 1568 (4th Cir. 1993); *Smith v. South Carolina,* 882 F.2d

895, 899 (4th Cir. 1989); *Smith v. Murray*, 477 U.S. 527, 536 (1986). The petitioner can overcome this presumption only if the ignored issue – the sufficiency of the evidence – is clearly stronger than the issues raised by Alexander's counsel on appeal. *See Robbins*, 528 U.S. at 288.

The petitioner claims that Quillian should have appealed the trial court's denial of his motion for acquittal, because there was insufficient evidence for a reasonable jury to conclude beyond a reasonable doubt that Alexander intended to distribute the drugs found on his person and in the car in which he was riding. Alexander argues that the "minuscule" amount of crack cocaine found by the police is consistent with the amount a drug user would carry. To the extent he was carrying a larger amount than a user would normally carry, Alexander's petition suggests he may have purchased this quantity so that he would not have to drive all the way to Washington, D.C. every day to buy drugs. Alexander points out that the government did not present evidence of any cash found on him, even though drug dealers often carry large amounts of cash. In short, Alexander claims that not a shred of evidence supports an inference that he intended to distribute the drugs.

It was established at trial that Alexander and Christian possessed at least 248.2 grams of crack cocaine at the time their vehicle was pulled over.[1] (Trial Tr. at 149.) Coy Rea, a former sergeant with the Greene County Sheriff's office, was accepted by the trial court as an

---

[1] Although 672 grams of crack was attributed to Alexander at sentencing, the jury was only aware of the 248 grams found in the car (and an unspecified amount of a rock-like substance that the officer felt under Alexander's clothes but which was never recovered). Thus, for purposes of challenging the sufficiency of the evidence, only the 248 grams will be considered.

11

expert on drug trafficking practices. He testified to the following: (1) crack cocaine is sold on the street to the end user in amounts ranging from a tenth of a gram to three and a half grams; (2) the average cost of a tenth of a gram on the street is fifty dollars; (3) crack sold on the street is often packaged in small vials, small baggies, or tissues; (4) no small baggies or tissues of that kind were found in Alexander's vehicle; (5) he had never known a street-level user to buy 248 grams of crack; (6) 248 grams of crack could be sold on the street for up to $124,000 if sold in units of a tenth of a gram (less if sold in larger units). (Trial Tr. at 159-61.) The government also introduced state and federal records showing that Alexander's reported income had been no more than $492.14 in any year and zero in many years. (Govt's Trial Exhs. 12, 13.) Alexander nevertheless paid $300 in cash to a young man to drive him to the Lynchburg area after he had fled from the scene of the traffic stop. (Trial Tr. at 115.)

Given this evidence that the petitioner was a drug dealer, rather than a mere user, the court cannot find that it was objectively unreasonable for Alexander's counsel to choose to pursue other issues on appeal. Appellate counsel's choice was especially understandable considering he would have had to convince the appeals court to find, after viewing the evidence in the light most favorable to the prosecution, that *no* rational factfinder could have found that the element of intent was established beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). While the claims counsel chose to raise on appeal did not ultimately prevail, they were not clearly weaker than the claim that the evidence was insufficient to justify the guilty verdict. The petitioner cannot overcome the presumption that his appellate counsel was effective.

## IV. Prosecutorial Misconduct Claim

The petitioner claims that the Assistant United States Attorney made false and unsupported statements during his closing argument, depriving Alexander of a fair trial in violation of his Fifth Amendment right to due process. Comments by a prosecutor during closing arguments are reversible error if: (1) they were in fact improper, and (2) they prejudicially affected the defendant's substantial rights so as to deprive him of a fair trial. *United States v. Chorman*, 910 F.2d 102, 113 (4th Cir. 1990). Some factors relevant to a prejudice determination are: (1) the degree to which the prosecutor's comments may mislead the jury; (2) whether the remarks were isolated or extensive; (3) the strength of the proof of guilt, absent the remarks; (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters; (5) whether the prosecutor's remarks were invited by defense counsel's misconduct; and (6) whether curative instructions were given to the jury. *United States v. Sheetz*, 293 F.3d 175, 185-86 (4th Cir. 2002). "To make statements which will not or cannot be supported by proof is, if it relates to significant elements of the case, professional misconduct. Moreover, it is fundamentally unfair to an opposing party to allow an attorney, with the standing and prestige inherent in being an officer of the court, to present to the jury statements not susceptible of proof but intended to influence the jury in reaching a verdict." *United States v. Dinitz*, 424 U.S. 600, 612 (1976) (Burger, J., concurring). *See also United States v. Morsley*, 64 F.3d 907, 914 (4th Cir. 1995) (finding prosecutor's statements not supported by the record to be improper).

As an initial matter, the government argues that this claim is procedurally barred,

because it was not raised at trial or on appeal and Alexander's petition fails to present any cause for this failure. *See Bousley v. United States*, 523 U.S. 614, 622 (1998) (requiring habeas petitioner who has failed to raise his claims previously to show cause and prejudice). In his reply, Alexander claims for the first time that he was prevented from raising this claim previously because his efforts were impeded by his appellate counsel's ineffective assistance. The court need not decide whether the claim is procedurally barred, because it finds that there was no error.

Alexander alleges three instances of prosecutorial misconduct. First, he objects to the prosecutor's statement that Alexander was referring to the cocaine when he told Christian during the traffic stop to "bring the food." The prosecutor stated that it must have been a signal regarding the drugs, because "[t]here's no food in the car." (Trial Tr. at 193). Alexander notes that it is undisputed that there was some old food from McDonald's in the car. The court finds it instructive to quote a larger excerpt from the prosecutor's closing argument than Alexander quotes in his petition:

> [T]he defendant's friend [Christian] gets out of the Ford and he's walking around, walking around back of that car, and the Defendant says to him, don't forget the food or bring the food, words to that effect, signaling, I suggest to you, signaling the Defendant or a signal on the part of the Defendant to Mr. Christian to bring the dope. It has to be a signal because, guess what? There's no food in the car. There is some old leftover McDonald's or fast food. It's cold, it's discarded. Number two, we know there is dope in the car. We know there is 248 grams, 248 grams of crack cocaine in the car. Cold, eaten, more than half-eaten McDonald's and 248 grams of crack cocaine. (Trial Tr. at 193-94.)

It is clear from the transcript that the prosecutor was not trying to mislead the jury regarding the presence of food in the car. He freely acknowledged the presence of the McDonald's

14

food. Rather than making unsupported statements, the prosecutor was propounding his theory that the comment "bring the food" referred to the cocaine, rather than to the cold, half-eaten food in the car. A prosecutor is permitted to suggest what reasonable inferences the jury should draw from the record, as long as he does not mischaracterize the evidence. That is all that happened here. Of course, the defense was free to attack the government's theory or to present its own, and it was up to the jury to decide whether the prosecution's theory matched the evidence.

Second, the petitioner claims that the prosecutor should not have stated that Alexander ran away from Officer Brown, who had drawn his weapon, because Alexander had something to hide. (Trial Tr. at 195.) According to Alexander, the prosecutor cannot read Alexander's mind, and he did not consider that running away could have been a natural reaction. Again, the prosecutor was simply presenting, for the jury's consideration, his suggestion as to what the events signified. A prosecutor is not obligated to present the defendant's side of every argument. After the closing arguments, the court instructed the jury as follows: "You heard testimony that . . . the Defendant . . . fled the scene of his motor vehicle stop. If you believe that the Defendant fled, you may consider this conduct, along with other evidence, in deciding whether the Government has proved beyond a reasonable doubt that the Defendant committed the offense charged. This conduct of fleeing may indicate that he thought he was guilty and was trying to avoid punishment. On the other hand, sometimes an innocent person may flee to avoid being arrested or for some other innocent reason." (Jury Instr. Tr. at 15.) Defense counsel argued in his closing statement that Alexander's flight did not mean he was

15

guilty of the charged crimes. (Trial Tr. at 213.) Thus, again, the jury was presented with an accurate representation of the evidence and competing theories about how to interpret that evidence. In other words, the process worked as it is supposed to work.

Finally, Alexander claims that the prosecutor should not have stated that, "Like most drug dealers, [Alexander and Christian] weren't employed." (Trial Tr. at 197.) Alexander claims that the prosecutor must "argue only the facts on the record" and leave the determination of guilt to the jury. By calling the defendant a drug dealer, the prosecutor was merely accusing the defendant of the crimes charged. It was clear from the opening of the trial that the government believed the defendant to be a drug dealer. By saying so, the prosecutor was not making an unsupported statement or interjecting his own personal opinions. The court finds, however, that it was error for the prosecutor to include the phrase "like most drug dealers." There was no testimony, even from the government's expert witness, former Sergeant Rea, that most drug dealers are not employed. The prosecutor could have suggested that the jury infer that Alexander's lack of an employment record was evidence that he was a drug dealer, but he could not assume, as he did, that it was a fact that most drug dealers are not employed. This isolated and minor error, however, was surely not prejudicial. Alexander's lack of reported income was far from the government's most significant evidence of Alexander's guilt. This statement did not so mislead the jury that Alexander was deprived of a fair trial.

Therefore, even if the petitioner's due process claim was not procedurally defaulted, the prosecution's conduct did not deprive Alexander of a fair trial in violation of his right to

16

due process. For the same reasons, Quillian did not provide ineffective assistance by failing to object to the prosecutor's statements at trial or on appeal.

## V.   *Blakely* and *Booker*

Finally, on February 2, 2005, the petitioner filed a motion under Federal Rule of Civil Procedure 15(d) to supplement his petition and add a Sixth Amendment challenge to his sentencing based on the Supreme Court's recent decisions in *Blakely v. Washington*, 124 S.Ct. 2531 (2004) and *United States v. Booker*, 125 S. Ct. 738 (2005). *Blakely* was issued on June 24, 2004, after the instant § 2255 petition was signed by the petitioner and his counsel but before it was filed; *Booker* was issued on January 12, 2005, after the petition was filed. At sentencing, this court found several aggravating factors that had not been admitted by the defendant or found by a jury beyond a reasonable doubt. Alexander claims that this violated his Sixth Amendment right to a jury trial under *Blakely* and *Booker*. In *Blakely*, however, the Supreme Court only struck down the sentencing scheme of the state of Washington; it expressly reserved judgment on the federal sentencing guidelines. 124 S. Ct. at 2538 n. 9. It was not until *Booker* that the Court explained how its reasoning in *Blakely* applied to the federal guidelines. In *Booker*, the Court invalidated the federal sentencing guidelines only to the extent that they were mandatory; it left the guidelines intact but required that sentencing courts treat them as advisory, subject to review for "reasonableness." 125 S. Ct. at 756, 764-65. Because Alexander was sentenced under the federal guidelines, it is *Booker* that applies directly to his case, rather than *Blakely*. As this court has previously held, the rule announced in *Booker* is not available to habeas petitioners such as Alexander. *United States v. Fulk*, No.

5:91CR00131, 2005 U.S. Dist. LEXIS 6687, 2005 WL 901038 (W.D. Va. Apr. 15, 2005) (Michael, J.) (publication forthcoming). *See also McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir. 2005); *Humphress v. United States*, 398 F.3d 855, 863 (6th Cir. 2005); *Varela v. United States*, 400 F.3d 864, 858 (11th Cir. 2005); *Lilly v. United States*, 342 F. Supp. 2d 532, 535 (W.D. Va. 2004).

## VI. Conclusion

For the reasons stated above, the court will deny the petition in its entirety. An appropriate order shall be issued this day.

The petitioner is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 60 days of the date of entry of this order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send certified copies of this memorandum opinion and accompanying order to petitioner and to counsel of record for respondent.

ENTERED: /s/ Jas. H. Michael, Jr.
Senior United States District Judge

Date: 5/26/2005